IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TOMMY LEE WAUGH, #47088-074, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 21-cv-812-JPG |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| KATHY HILL, and | ) |
| SCHREIBER, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

This matter is before the Court for a merits review under 28 U.S.C. § 1915A of Plaintiff Tommy Lee Waugh's First Amended Complaint (Doc. 13), filed at the direction of the Court. (Doc. 10, pp. 6-7). 28 U.S.C. § 1915A requires the Court to screen prisoner Complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

Plaintiff is an inmate in the custody of the Federal Bureau of Prisons ("BOP"), currently incarcerated at the United States Penitentiary in Terre Haute, Indiana. (Doc. 9). He was previously confined at the United States Penitentiary in Marion, Illinois ("Marion") in the Communications Management Unit ("CMU"). While at Marion, Plaintiff filed a Complaint in the Circuit Court for the First Judicial Circuit, Williamson County, in the State of Illinois.[1] (Doc. 1-1, pp. 2-21). Defendants removed the case to this Court pursuant to the Federal Employees Liability Reform

---

[1] Plaintiff filed his state case on April 30, 2021, and it was docketed as Williamson County Case No. 21-L-52. (Doc. 1-1, p. 2).

and Tort Compensation Act of 1988, a federal statute commonly known as the "Westfall Act," 28 U.S.C. § 2679, and alternatively under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). (Doc. 1). Plaintiff did not object to the removal, and the Court found removal was proper. (Doc. 10, pp. 2-3).

Plaintiff's original Complaint set forth 12 claims against 23 Defendants and sought damages and injunctive relief for the denial of notary services, which prevented Plaintiff from filing four state court lawsuits in Pima County, Arizona, where he was previously confined in federal prison. Plaintiff's original Counts 1 and 2 claimed violations of his First Amendment right to access the courts and redress grievances. Counts 3 and 4 were statutory claims under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 706(1) and 705(2)(A). Count 5 sought a writ of mandamus under 28 U.S.C. § 1361. Counts 6, 7, and 10 alleged civil conspiracy in violation of 42 U.S.C. §§ 1985(3), 1985(2), and 1986. Counts 8-12 raised tort claims under Illinois law (Count 8 for fraud, Count 9 for civil conspiracy, Count 11 for negligence, and Count 12 for intentional infliction of emotional distress). (Doc. 1-1, pp. 15-21).

On March 25, 2022, the Court granted in part the Defendants' motion to substitute the United States of America in place of the individual Defendants. (Doc. 10, pp. 3-5, 7). The United States was substituted as to Counts 3, 4, 8, 9, 11, and 12, and the original Defendants were dismissed from those counts. In that Order, the Court also directed Plaintiff to file an amended complaint in the instant case to set forth all the claims he wished to pursue relating to the denial of notary services that he originally included in this case and in *Waugh v. Hill*, Case No. 21-cv-1068-JPG. (Doc. 10, pp. 6-7). The original Complaint in this case was duplicative of the Complaint in Case No. 21-1068-JPG, which was removed to this Court in August 2021. That duplicate case (No. 21-1068-JPG) has now been administratively closed.

### THE FIRST AMENDED COMPLAINT (DOC. 13)

The First Amended Complaint has pared down the claims and Defendants, and includes only Counts 3, 4, 8, 9, 11, and 12 from the original pleading. (Doc. 13, pp. 1-2, 18-19). Plaintiff makes the following allegations: In November 2018, he was placed in the Special Housing Unit while incarcerated at USP-Tucson based on false information from the Tennessee Department of Children Services. The false information led to a prison incident report. Plaintiff was found guilty of that infraction while at USP-Tucson and was sanctioned with a loss of privileges, loss of good time, and a transfer to the Communications Management Unit ("CMU") at Marion. (Doc. 13, p. 16). He arrived at Marion in October 2019 and thereafter prepared four civil complaints against USP-Tucson staff and other BOP employees, to be filed in Pima County, Arizona, Superior Court. Plaintiff gave the complaints to Kathy Hill (Marion Intelligence Research Specialist) for mailing on February 8, 2020. *Id.*

In December 2020 the Pima County Superior Court returned Plaintiff's complaints because his fee waiver applications were not notarized, and other documents were lacking. (Doc. 13, pp. 16, 21). Hill, Schreiber (Marion Administrative Remedy Coordinator), and other BOP officials[2] then conspired to prevent Plaintiff from filing his Pima County complaints, so that their "lies and corruption" in unjustifiably transferring him to the CMU would not come to light. (Doc. 13, pp. 16-17). These officials agreed that Hill was not to notarize any documents for Plaintiff, and Marion Warden Sproul issued a memorandum that Marion staff would no longer offer courtesy notary services to inmates. (Doc. 13, p. 17). This directive was contrary to the BOP's Program Statement

---

[2] Plaintiff identifies other members of the alleged conspiracy as Blanckensee, Boussag, Sproul, LeClair, Sieverfeld, Simpkins, Wallace, and Carvajal. (Doc. 13, p. 17). These individuals were included as Defendants in the original Complaint, but Plaintiff omits them from the list of Defendants in the First Amended Complaint, therefore the Court concludes they are no longer parties to this action. (Doc. 13, pp. 1-2).

1315.07 section 15 and contrary to the ruling in *Bounds v. Smith*, 430 U.S. 817, 824-25 (1977). *Id.*

In January 2021, Hill refused to notarize Plaintiff's documents for his lawsuits. Plaintiff filed a BP-8 administrative complaint, and Sproul's memorandum on notary services was posted several days later. (Doc. 13, pp. 12, 17, 22). The BP-8 was denied, Plaintiff filed a BP-9, and on February 24, 2021, Schreiber rejected the BP-9 on the grounds that it was not worded the same as his BP-8. (Doc. 13, pp. 14, 17). Plaintiff asserts his BP-9 was wrongly rejected and states he resubmitted it. (Doc 13, p. 18).

Plaintiff seeks nominal, compensatory, and punitive damages. (Doc. 13, p. 20).

Based on the allegations and Plaintiff's articulation of his claims in the First Amended Complaint (Doc. 13, pp. 18-19), the Court designates the following claims in this *pro se* action. For clarity with reference to the original Complaint and the Court's previous Order (Doc. 10), the original numbering of claims is retained:

| | |
|---|---|
| Count 3: | Administrative Procedure Act claim under 5 U.S.C. § 706(1) against the United States of America, for compelling Defendant Hill to deny Plaintiff notary services necessary to file his Arizona civil complaints. |
| Count 4: | Administrative Procedure Act claim under 5 U.S.C. § 706(2)(A) against the United States of America, for arbitrarily and unlawfully refusing to notarize Plaintiff's documents. |
| Count 8: | Claim under Illinois law for common law fraud against the United States of America for BOP officers' fraudulent statements that the BOP does not provide notary services to inmates and defrauding Plaintiff by posting a fake memorandum. |
| Count 9: | Claim under Illinois law for civil conspiracy against the United States of America for BOP employees' conspiracy and agreement to prevent Plaintiff from filing his Arizona complaint by denying him notary services. |
| Count 11: | Claim under Illinois law for negligence against the United States of America for its employees' refusal to notarize documents, causing Plaintiff to miss his deadline to file his Arizona lawsuits. |

|  |  |
|---|---|
| Count 12: | Claim under Illinois law for intentional infliction of emotional distress against the United States of America for BOP employees' refusal to notarize Plaintiff's documents. |

Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.[3]

## DISCUSSION

### Counts 3 and 4 – Administrative Procedure Act

The Court already noted that the APA claims in Counts 3 and 4 are not properly brought against the individual Defendants. (Doc. 10, pp. 4-5). Defendants Hill and Schreiber were dismissed from these counts and the United States was substituted in their place (Doc. 10, p. 7), however, Plaintiff included them as Defendants in the First Amended Complaint. In accordance with the Court's previous ruling, Defendants Hill and Schreiber will be dismissed from Counts 3 and 4 and from the action. Plaintiff previously named the Bureau of Prisons as a Defendant in connection with these claims, but omitted the agency in the First Amended Complaint, thus the Bureau of Prisons will also be dismissed from the action.

The APA provides for judicial review of an agency action that adversely affects a person. 5 U.S.C. § 702. An aggrieved person may bring an action against the United States "seeking relief other than money damages[.]" *Id.* Nowhere does the APA provide for an award of money damages such as Plaintiff requests here. *See Builders NAB LLC v. Fed. Deposit Ins. Corp.*, 922 F.3d 775, 777 (7th Cir. 2019) ("§ 702 waives sovereign immunity only with respect to relief 'other than money damages'"). Instead, the APA contemplates the issuance of a "mandatory or injunctive

---

[3] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

decree" if one is warranted after judicial review.

Section 706(1) directs that a court sitting in review of an agency action shall "compel agency action unlawfully withheld or unreasonably delayed;" and under § 706(2)(A), shall "hold unlawful and set aside agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" These are the sections Plaintiff invokes as grounds for his claims in Count 3 and Count 4, respectively. However, he requests an award of money damages for the denial of notary services in these two counts, rather than an order compelling the BOP to act or setting aside the agency's action. Because money damages are not authorized by the APA, Plaintiff fails to state a claim upon which relief may be granted in Counts 3 and 4.

To the extent Plaintiff might seek an order compelling the BOP to provide him with notary services for the lawsuit he attempted to file, the First Amended Complaint indicates that such a request has become moot – it does not appear that a live case or controversy remains for which the Court could provide Plaintiff with meaningful injunctive relief if he were to prevail. *See Olson v. Brown*, 594 F.3d 577, 580 (7th Cir. 2010) ("A case is moot when 'the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'") (quoting *United States Parole Commission v. Geraghty,* 445 U.S. 388, 396 (1980)). Plaintiff states under Count 11 that he already missed the deadline to submit his civil complaints to the Pima County Superior Court. (Doc. 13, p. 19). Therefore, even if the Court were to find in Plaintiff's favor on the matter, an order requiring officials to notarize Plaintiff's documents at this time would be of no benefit to him. (Doc. 13, p. 19).

Counts 3 and 4 will be dismissed without prejudice pursuant to 28 U.S.C. § 1915A.

**Counts 8, 9, 11, and 12 – Federal Tort Claims**

The United States of America was substituted for the individual Defendants for these claims, all of which are based on Illinois law and are governed by the FTCA, 28 U.S.C. § 2671, *et seq.*; (Doc. 10, pp. 3-5, 7). Section 2679(d)(4) of the FTCA provides that, as here, when the United States is substituted for individual federal-employee defendants following certification by the Attorney General that the employees were acting within the scope of their office/employment, the action "shall proceed in the same manner as any action against the United States filed pursuant to section 1346(b) of this title and shall be subject to the limitations and exceptions applicable to those actions." 28 U.S.C. § 2679(d)(4). Section 1346(b) establishes district court jurisdiction over "civil actions on claims against the United States, for money damages … for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government" where the law of the place of occurrence would provide for liability. 28 U.S.C. § 1346(b)(1).

### *Count 8 - Fraud*

In Count 8, Plaintiff seeks damages under Illinois law for common law fraud, alleging that BOP officials fraudulently stated that the BOP does not provide notary services to the inmate population and that Warden Sproul's memorandum to that effect was "fake." (Doc. 13, p. 18). Under Illinois law, the elements of common law fraud that must be alleged in a Complaint are:

> (1) a false statement of material fact; (2) the party making the statement knew or believed it to be untrue; (3) the party to whom the statement was made had a right to rely on the statement; (4) the party to whom the statement was made did rely on the statement; (5) the statement was made for the purpose of inducing the other party to act; and (6) the reliance by the person to whom the statement was made led to that person's injury.

*Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 905 (Ill. 1996) (quoting *Siegel v. Levy Organization Development Co.*, 607 N.E.2d 194 (Ill. 1992)).

Here, Plaintiff claims that BOP officials lied when they stated that notary services were not available to inmates and that Warden Sproul's memo stating the same contained false information. For Plaintiff to prove those assertions, he must establish that the BOP did in fact provide notary services for inmates such as himself, and that the officials knew their statements were false, which would satisfy the first two elements above. However, Plaintiff makes no allegations in support of elements 3-6. In particular, the First Amended Complaint fails to suggest that BOP officials made their statements in order to induce Plaintiff to take some action, or that he relied on the statement and was injured as a result. Instead of relying on the statements to his detriment, it is clear that Plaintiff challenged the statements that notary services were no longer available and attempted to get officials to notarize his documents, by using the prison's administrative remedy procedure without success. It was not Plaintiff's reliance on the allegedly false statements that injured him; instead, it was BOP officials' actual refusal to notarize his documents that prevented him from pursuing his suit.

Because the First Amended Complaint does not include factual allegations supporting each element of common law fraud under Illinois law, and does not indicate that reliance on fraudulent statements caused Plaintiff's injury, Count 8 will be dismissed for failure to state a claim upon which relief may be granted.

### Count 9 – Civil Conspiracy

Under Illinois law, to prevail on a claim for civil conspiracy, a Plaintiff must show: "(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509 (7th Cir. 2007) (citing *McClure v. Owens Corning*

*Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999)). Here, Plaintiff alleges that several BOP officials agreed among themselves to withhold notary services from Plaintiff in order to prevent him from filing his civil complaint (which named a number of these officials as defendants) in the Pima County, Arizona, court. (Doc. 13, pp. 16-17). At this stage, Plaintiff's allegations are sufficient for Count 9 to proceed against the United States.

### Count 11 – Negligence

In Illinois, in order to state a claim for negligence, a complaint must allege facts to establish that the defendant owed the plaintiff a duty of care, breached that duty, and that the breach was the proximate cause of the plaintiff's injury. *Thompson v. Gordon*, 948 N.E.2d 39, 45 (Ill. 2011). Plaintiff asserts that under BOP policy[4] and Supreme Court precedent, the BOP officials had an obligation to provide notary services to inmates to allow them access to the courts, yet they negligently refused to do so, causing Plaintiff to miss his deadline to bring his suit in Pima County, Arizona. (Doc. 13, pp. 17, 19). Count 11 also survives § 1915A review and will proceed for further consideration.

### Count 12 – Intentional Infliction of Emotional Distress

In order to state a claim under Illinois law for intentional infliction of emotional distress, Plaintiff must show that the BOP officials acted in an extreme and outrageous way, intending to inflict severe emotional distress or knowing there was a high probability that would occur, and that the actions in fact caused him severe emotional distress. *See Doe v. Calumet City*, 641 N.E.2d 498, 506-07 (Ill. 1994) (citing Restatement (Second) of Torts § 46, comment d (1965)). Plaintiff alleges that BOP officials refused to notarize his documents when this service should have been provided

---

[4] The Court notes that Plaintiff references Section 15 of BOP Program Statement No. 1315.07 (Legal Activities, Inmate) regarding the provision of notary services. It appears that Section 16 of that document, entitled "Administering Oaths and Acknowledgments" is the correct reference for this matter. *See* https://www.bop.gov/PublicInfo/execute/policysearch# (last visited June 23, 2022).

under agency policies and applicable law, that their refusal was intended to cause him emotional distress, and that he suffered anxiety, depression, weight loss, and suicidal thoughts as a result. At this stage, Count 12 also survives § 1915A review and may proceed.

### DISPOSITION

**IT IS HEREBY ORDERED** that Counts 3, 4, and 8 are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. Defendants Hill, Schreiber, and the Bureau of Prisons are **DISMISSED** without prejudice from the action.

**IT IS FURTHER ORDERED** that Counts 9, 11, and 12 survive § 1915A review and will proceed as FTCA claims against the United States of America.

The Clerk of Court is **DIRECTED** to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on the United States; the Clerk shall issue the completed summons. The United States Marshals **SHALL** serve the United States pursuant to Rule 4(e) of the Federal Rules of Civil Procedure. All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service.

In addition, pursuant to Federal Rule of Civil Procedure 4(i), the Clerk shall (1) personally deliver to or send by registered or certified mail addressed to the civil-process clerk at the office of the United States Attorney for the Southern District of Illinois a copy of the summons, the First Amended Complaint (Doc. 13), and this Memorandum and Order; and (2) send by registered or certified mail to the Attorney General of the United States at Washington, D.C., a copy of the summons, the First Amended Complaint (Doc. 13), and this Memorandum and Order.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to**

**Administrative Order No. 244, Defendant need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, even though his application to proceed without payment of fees was granted by the state court. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is reminded that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  6/29/2022**

                                                   *s/ J. Phil Gilbert*
                                                   **J. PHIL GILBERT**
                                                   **United States District Judge**

**<u>Notice to Plaintiff</u>**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so**.