UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TOMMY LEE WAUGH,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES OF AMERICA, KATHY HILL, and SCHREIBER,<br><br>    Defendants. | Case No. 21-cv-812-JPG |

## MEMORANDUM AND ORDER

This matter comes before the Court on the defendant United States of America's motion for summary judgment (Doc. 38). Plaintiff Tommy Lee Waugh has responded to the motion (Doc. 42).

Waugh brings claims against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) & 2671-2680. His claims concern events occurring when he was a federal inmate in the United States Penitentiary at Marion, Illinois ("USP-Marion"). Specifically, he complains that the warden and staff at USP-Marion failed to provide him notary services that he claims were necessary to file state court actions in Arizona. He is now housed at another Bureau of Prisons ("BOP") facility.

The Court will grant the United States summary judgment because Waugh failed to exhaust administrative remedies before filing this lawsuit.

## I.   Summary Judgment Standard

Summary judgment is appropriate only if the moving party can show "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the

nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the burden of establishing that no material facts are genuinely disputed. *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004). Any doubt about the existence of a genuine issue must be resolved in favor of the nonmoving party. *Id*.

Generally, the court cannot resolve factual disputes on a motion for summary judgment; they must be decided by a jury. *See, e.g.*, *Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014) ("[A] trial is the standard means of resolving factual disputes. . . ."). But the opposite is true when the motion pertains to a prisoner's failure to exhaust administrative remedies. The Seventh Circuit Court of Appeals has instructed courts to conduct an evidentiary hearing to resolve contested issues of fact regarding a prisoner's purported failure to exhaust. *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008); *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015); *Roberts*, 745 F.3d at 234. Where there are no material factual disputes, an evidentiary hearing is not necessary. *See Doss v. Gilkey*, 649 F. Supp. 2d 905, 912 (S.D. Ill. 2009); *Rayborn v. Sproul*, No. 21-CV-01200-JPG, 2023 WL 4849305, at *2 (S.D. Ill. July 28, 2023). Because there are no disputed issues of material fact regarding whether Waugh exhausted his administrative remedies, no hearing is necessary.

**II.     Relevant Facts**

Construing the evidence and the reasonable inferences that can be drawn from it in Waugh's favor, the Court finds the following relevant facts.

Waugh is a federal prisoner serving a 44-year sentence imposed by the United States District Court for the Eastern District of Tennessee. From October 2019 to August 2021, he was housed at USP-Marion. Before that, he had been housed at the Federal Correctional Complex at Tucson, Arizona ("FCC-Tucson"), and after that he was moved to the Federal Correctional Complex at Terre Haute, Indiana, where he is now housed.

Waugh had some gripes about his stay at FCC-Tucson, so he drafted four complaints and mailed them to the Superior Court of Pima County, Arizona, along with a motion to either waive the filing fee or be permitted to proceed without prepayment in each case.  In December 2020, the Pima County Superior Court returned the documents unfiled for various reasons, including that Waugh's signature on the motions regarding waiving the filing fees were not notarized.

When Waugh first arrived at USP-Marion, it had been the practice of USP-Marion staff to notarize documents for inmates that needed that service.  Specifically with respect to Waugh and others in his housing unit, Intelligence Research Specialist Kathy Hill had notarized documents.  Naturally, when Waugh received the returned documents because they had not been notarized, he asked Hill to provide the necessary notarizations.  Hill at first said she had no problem notarizing Waugh's documents but later refused to do so.

On February 2, 2021, Waugh filed a BP-8 (Administrative Remedy—Informal Resolution) complaining that Hill refused to print him a form from the Pima County Superior Court website and refused to notarize documents for him.  Waugh's correctional counselor denied his BP-8 on February 8, 2021.

In the meantime, in a memorandum dated February 3, 2021, USP-Marion Warden Daniel Sproul expressly discontinued complimentary notary services by BOP staff.

Waugh continued the Administrative Remedy process by filing a BP-9 (Request for Administrative Remedy) on February 17, 2021.  He again complained that Hill refused to notarize his documents and added a complaint about Warden Sproul's February 3 memorandum.  After rejection for a technical error and resubmission, Warden Sproul rejected Waugh's BP-9 on the merits on April 13, 2021.

Before receiving Warden Sproul's response, Waugh filed an Administrative Tort Claim about the notary issues on form Standard Form 95 ("SF-95") with the BOP's North Central

Regional Office. The Regional Office received the claim on April 5, 2021, and denied it in a letter dated October 7, 2021. The letter advised Waugh that it was a final denial of his claim and that he could file a federal lawsuit within six months.

Meanwhile, on April 30, 2021, two and a half weeks after submitting his Administrative Tort Claim but before receiving a response from the Regional Office, Waugh filed this lawsuit in the Circuit Court for the First Judicial Circuit, Williamson County, Illinois. On July 15, 2021, the United States removed the case to this Court, certified that the individual defendants were federal employees acting within the scope of their employment during the events alleged in the Complaint. It asked to be substituted under the Westfall Act, 28 U.S.C. § 2679(b)(1), for the individual defendants in Waugh's state law tort claims because they must be brought under the FTCA. Waugh filed the First Amended Complaint at the Court's direction on May 13, 2022.

The United States asserts Waugh's failure to exhaust his Administrative Tort Claim remedies before filing suit as a sufficient basis for summary judgment. Waugh pleads ignorance of the Administrative Tort Claim exhaustion process and blames the United States for seeking to be substituted for the named defendants when it knew Waugh had not yet exhausted his FTCA remedies. He further posits that he did not "file" his FTCA claims because he filed his case in state court against individuals, and the United States was responsible for the case reaching federal court. He notes that he first filed a pleading in federal court naming the United States as a defendant on May 13, 2022, when he filed the Amended Complaint (Doc. 13). This was more than six months after he filed Administrative Tort Claim in April 2021 and after the claim was denied in October 2021.

The parties also makes additional arguments on the merits which the Court need not consider because exhaustion is a threshold—and here, dispositive—issue to be decided before the merits. The Seventh Circuit Court of Appeals has explicitly held that the exhaustion issue

cannot be avoided on summary judgment by diving straight into the merits of the case: "Application of a law designed to prevent decision on the merits cannot be avoided by making the very decision whose propriety is contested, then declaring the decision-avoidance statute 'moot.'" *Perez v. Wisc. Dep't of Corr.*, 182 F.3d 532, 534 (7th Cir. 1999). The Court of Appeals concluded that "a suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits. . . ." *Id.* at 535.

**III.    Analysis**

    A.    Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") provides that a prisoner may not bring a lawsuit about prison conditions until he exhausts available administrative remedies. 42 U.S.C. § 1997e(a). The exhaustion requirement applies to state and federal inmates alike. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). As a federal inmate, Waugh is subject to the PLRA's exhaustion requirement.

The purpose of exhaustion is to give prison officials the opportunity to resolve disputes informally and expeditiously without court intervention. *Perez v. Wisc. Dep't of Corr.*, 182 F.3d 532, 537 (7th Cir. 1999) (exhaustion serves dual purposes of "narrow[ing] a dispute [and] avoid[ing] the need for litigation"). Prison officials must have an opportunity to address disagreements internally before a plaintiff seeks court intervention. "Until the issue of exhaustion is resolved, the Court cannot know whether it is to decide the case or the prison authorities are to." *Pavey v. Conley*, 544 F.3d 739, 741 (7th Cir. 2008). An inmate cannot sue first and exhaust later.

Additionally, exhaustion must be done right. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). The Seventh Circuit Court of Appeals demands strict compliance with the exhaustion rules. *Doe*

5

*v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).  To properly exhaust, a prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Woodford*, 548 U.S. at 90. "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust his . . . remedies."  *Pozo*, 286 F.3d at 1024.  "The exhaustion requirement is an affirmative defense which the defendants bear the burden of proving."  *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011).

In addition to the PLRA, the FTCA requires exhaustion.[1]  An FTCA plaintiff must first present his claim to the appropriate federal agency and cannot file a  suit until the agency has made a final disposition of the claim.  28 U.S.C. § 2675(a) ("An action shall not be instituted upon a claim against the United States . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency . . . ."); *see McNeil v. United States*, 508 U.S. 106, 113 (1993); *Palay v. United States*, 349 F.3d 418, 425 (7th Cir. 2003).

For a federal prisoner to properly exhaust administrative remedies for a tort claim, he must follow the formal Administrative Tort Remedy process established by the BOP.[2]  That process begins with filing an administrative tort claim within two years of the acts giving rise to

---

[1] To the extent Waugh's lawsuit may not be "with respect to prison conditions," the scope of the PLRA's exhaustion requirement, the FTCA requires exhaustion because Waugh seeks "money damages for injury or loss of property or personal injury" allegedly caused by United States employees within the scope of their employment.  *See* 42 U.S.C. § 1997e(a); 28 U.S.C. § 2675(a).

[2] The BOP has other rules under the Administrative Remedy Program for exhausting administrative remedies for issues relating to aspects of confinement other than state law torts. 28 C.F.R. § 542.10(a); *see* 28 C.F.R.§§ 542.10-542.19.  Even if it were possible to exhaust Waugh's FTCA claims under the separate Administrative Remedy Program, he failed to follow that procedure to its conclusion before filing suit.  Once Warden Sproul rejected Waugh's BP-9, he could have appealed to the Regional Director on a BP-10 form, and if he was not happy with that response, appealed to the General Counsel on a BP-11 form.  28 C.F.R. § 542.15.

the claim. 28 U.S.C. § 2401(b). An inmate must complete and mail the appropriate Administrative Tort Claim form to the BOP Regional Office of the region where the claim occurred. 28 C.F.R. § 543.31(c) (2021). After investigation, the BOP's Regional Counsel will issue a decision. 28 C.F.R. § 543.32(c)-(d) (2021). If the inmate is not happy with the outcome at the regional office level, he may request reconsideration by the BOP. 28 C.F.R. § 543.32(g) (2021). If the inmate is dissatisfied with the decision, he may file an FTCA lawsuit in the appropriate district court. *Id.* If the inmate does not receive a response within six months of filing a claim, the claim is deemed denied, and the inmate may proceed to file a lawsuit. 28 U.S.C. § 2675(a); 28 C.F.R. § 543.32(i) (2021).

B.  Discussion

The United States asks the Court to dismiss Waugh's FTCA claims because he failed to exhaust his Administrative Tort Remedies before filing suit. Specifically, it notes that he filed this lawsuit in state court on April 30, 2021. At that time, Waugh had not yet received a decision from the Regional Office on his April 5, 2021, Administrative Tort Claim, and six months had not passed such that he could deem his claim denied. Thus, the United States argues, Waugh did not exhaust his administrative remedies before filing this lawsuit.

Waugh argues about the date he "instituted" this lawsuit "against the United States." 28 U.S.C. § 2675(a). To the extent the date might have been April 30, 2021, the date he filed his state court law suit against individual defendants, he argues that that was not an action in federal court "instituted . . . against the United States." To the extent the date might have been in July 2021, when the United States sought to be substituted as a defendant, he argues that it was United States's fault for seeking to be substituted before his Administrative Tort Claim was denied in October 2021. He posits that the first time *he* filed a pleading against the United States was May 13, 2022, which was clearly more than six months after he filed his Administrative Tort

7

Claim. He therefore claims he did not "institute[] . . . a claim against the United States" until after his Administrative Tort Claim was denied.

The United States argues that Waugh instituted his FTCA suit on April 30, 2021, when he filed his state lawsuit. There is some support for a contrary position. Courts have held that a plaintiff who is unaware that a tort defendant is a federal employee does not institute a claim against the United States by filing a tort suit in state court against an individual defendant. *D.L. by & through Junio v. Vassilev*, 858 F.3d 1242, 1246 (9th Cir. 2017). However, it is clear that Waugh knew the federal prison officials he was suing were federal employees. In fact, in the Court's experience, inmates frequently knowingly sue federal prison officials in state court for clear federal causes of action to take advantage of more lenient filing fee requirements there and to force the federal defendants to remove the cases.

There is also some support for the position that, for FTCA purposes, the date a removed FTCA suit is instituted is the date the Attorney General certifies that the federal employee was working within the scope of his employment. After all, an action is "deemed an action against the United States" upon such certification. 28 U.S.C. § 2679(d); *McGowan v. Williams*, 623 F.2d 1239, 1242 (7th Cir. 1980); *Osborn v. Haley*, 549 U.S. 225, 252 (2007); *O'Neill by O'Neill v. United States*, 732 F. Supp. 1254, 1257 (E.D.N.Y. 1990) (noting "the claim against the employee became at the moment of certification a claim against the United States"). It is true that this interpretation puts the date of institution in the hands of the United States, which may decide not to act until the statute of limitations has passed. But even in that situation, the plaintiff always has the option of filing an FTCA lawsuit directly against the United States in federal court within the limitations period.

There is less support for Waugh's position—indeed, he cites none—that he did not institute an FTCA lawsuit against the United States until he filed the Amended Complaint in

8

May 2022.  This is especially true where he knew from the outset of his state lawsuit that he was suing federal employees and where 28 U.S.C. § 2679(d) meant that his lawsuit was deemed an FTCA suit since July 2021.  In no sense of the words did Waugh institute a lawsuit against the United States when he amended a pleading that had been deemed to include FTCA claims against the United States for nearly ten months.

In sum, Waugh's action is too early.  Whether he instituted his lawsuit against the United States when he filed his state court action or when the United States filed a certification under the Westfall Act makes no difference.  Both events occurred before the BOP Regional Office finally denied his Administrative Tort Claim in October 2021.  Waugh simply filed this case too early.  Consequently, the Court must dismiss this claim for failure to exhaust administrative remedies without reaching the merits of Waugh's claims.

IV.   **Conclusion**

For the foregoing reasons, the Court:

- **GRANTS** the United States's motion for summary judgment for failure to exhaust administrative remedies (Doc. 38);

- **DISMISSES** Waugh's FTCA claims **without prejudice**; and

- **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED:  January 17, 2024**

                                            s/ J. Phil Gilbert
                                            **J. PHIL GILBERT**
                                            **DISTRICT JUDGE**